FILED
United States Court of Appeals
Tenth Circuit

**January 18, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OSCAR U. SOMOZA and
MIRIAM BORNSTEIN-GÓMEZ,

      Plaintiffs - Appellants,

v.

UNIVERSITY OF DENVER, BOARD
OF TRUSTEES OF THE UNIVERSITY
OF DENVER, HELGA WATT, LUC
BEAUDOIN AND JAVIER TORRE in
their individual capacities,

      Defendants - Appellees.

No. 06-1488

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 05-CV-355-PAC-BNB)**

---

Dolores S. Atencio, of the Atencio Law Firm, Denver, Colorado, for the Plaintiffs - Appellants.

Jim Goh (Christina Gómez with him on the brief), of Holland & Hart Law Firm, Denver, Colorado, for the Defendants - Appellees.

---

Before **LUCERO, HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

# I. INTRODUCTION

Plaintiffs-Appellants, Professors Oscar Somoza and Miriam Bornstein-Gómez, brought an action against the Defendants-Appellees, University of Denver and several others, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, for disparate treatment, hostile work environment and retaliation on the basis of their race/national origin. Plaintiffs-Appellants also brought various state law claims against the University of Denver. The parties consented to have the case decided by a Magistrate Judge under 28 U.S.C. § 636(c). The Magistrate Judge granted the Defendants-Appellees' motion for summary judgment and dismissed Plaintiffs-Appellants' action.

Appellants appeal one issue from the Magistrate's ruling. That issue is whether the Magistrate Judge committed reversible error in dismissing the Appellants' retaliation claims by failing to apply the new standard adopted by the United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006). Thus, the state law claims, disparate treatment claims, and hostile work environment claims are not at issue in this appeal. Furthermore, at oral argument and in a later letter to this court, Appellants' counsel stated that Appellants have waived two issues originally asserted in this appeal, those dealing with salary and workload.

# II. BACKGROUND

Appellants are Mexican-American and are faculty members of the Spanish section of the Department of Languages and Literature at the University of Denver.

-2-

Appellants claim to have engaged in over twenty acts of protected conduct during the period of February 2003 through February 2005, with retaliatory actions following the conduct.  The Magistrate provided a thorough synopsis of Appellants' claims and the factual elements therein; therefore we reproduce the instances spelled out by the Appellants in the brief as relevant conduct for establishing a prima facie case for employment retaliation.

In Appellants' brief, they detail thirteen scenarios in which the professors allegedly engaged in protected activity, after which retaliatory conduct allegedly followed.  They are as follows:

1.  Appellants complained to Susan Lee, Director of Equal Employment Opportunity at the University of Denver, and Department Chair Luc Beaudoin about their unfavorable and biased treatment during the Assistant Professor search in February 2003 and also about their perception of the sexist treatment of a teaching candidate, Joseph McClanahan.  Appellants were allegedly subjected to public humiliation at a February 2003 department-wide meeting.

2.  On February 17, 2003, Appellants met with Dean Kvistad, Chair Beaudoin and Professor DiFranco, who explained that they had elected to postpone the search for an Assistant Professor.  Chair Beaudoin convened a Department meeting to vote on a decision regarding the search.

3.  Dean Kvistad allegedly takes a lecturer position away from the Spanish Section.

4.  On April 9, 2003 Chair Beaudoin allegedly precluded Appellants from selecting a Spanish section lecturer.

5.  Chair Beaudoin allegedly prevented them from participating in the search process for a new Spanish section lecturer.

6.  Appellants met with Dean Kvistad and Susan Lee where they raised issues

of a hostile working environment and discriminatory, disparate treatment. On June 15, 2003 Miriam Bornstein-Gómez asked Dean Kvistad for compensation as section coordinator.

7.      Chair Beaudoin allegedly allowed Javier Torre, a junior Spanish faculty member, to harass Appellants.

8.      Appellants filed their discrimination complaints with Susan Lee against Chair Beaudoin and Javier Torre.

9.      Appellants wrote to Provost Coombe, Dean Kvistad and Chair Beaudoin about Torre's harassing and retaliatory behavior.

10.     Chair Beaudoin allegedly abolished the Spanish section.

11.     Appellant Bornstein-Gómez sent another memo to Javier Torre outlining the ongoing harassment by Torre which was copied to Provost Coombe, Dean Kvistad and Chair Beaudoin.

12.     On December 1, 2003, Appellants filed their first Equal Employment Opportunity Commission complaint.

13.     Appellant Miriam Bornstein-Gómez was allegedly precluded from participating in the selection of the Basic Language Coordinator for the Spanish program.

14.     In October 2004, Appellants filed their second Equal Employment Opportunity Commission complaints, and on February 25, 2005, they filed their lawsuit. Department Chair Jennifer Pap allegedly made alterations to the Spanish section.

Appellants' only contention is that granting summary judgment in favor of the Defendants-Appellees was inappropriate in light of the evidence supplied when analyzed under the broader retaliation claim standard set forth in *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).

### III.  DISCUSSION

#### A.  Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court."  *Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We examine the factual record and draw all reasonable inferences in the light most favorable to the non-moving party. *Simms*, 165 F.3d at 1326.

#### B.  Retaliation Claims under Title VII and 42 U.S.C. § 1981

The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981.  *See Roberts v. Roadway Exp., Inc.*, 149 F.3d, 1098, 1103 n.1, 1110 (10th Cir. 1998); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997).  In analyzing retaliation claims, we apply the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1263-64 (10th Cir. 1998).  This structure requires the plaintiff to first establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Should the plaintiff succeed in proving a prima facie case, the employer must provide a legitimate and facially non-discriminatory reason for its decision.  *Id.* Finally, if the employer satisfies this burden, the plaintiff must establish that the

-5-

defendant's reasons were a pretext for discrimination. *Id.* at 804.

In order to establish a prima facie case of retaliation, Plaintiffs must show that (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)

### C. *Burlington Northern & Santa Fe Ry. Co. v. White*

The sole issue in this appeal is whether the Magistrate Judge applied the wrong standard in evaluating Plaintiffs' case, thereby improperly granting the Defendants' motion for summary judgment. Specifically, Plaintiffs contend that *Burlington Northern* broadened the scope of actions that could be considered adverse employment actions, which necessarily alters the second prong of the *McDonnell Douglas* test.

In *Burlington Northern*, the Court dealt with the scope of conduct considered forbidden by Title VII's anti-retaliation provision. Specifically, the Court compared the anti-discrimination provisions found in Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), with the anti-retaliation provision found in Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

The Court rejected the argument of the Solicitor General that the two provisions should be read *in pari materia*, thereby limiting the conduct sufficient to sustain an anti-retaliation claim to the conduct sufficient to meet the standard defined in the anti-discrimination provision. The Court determined that the differences in language

-6-

between the two provisions were intentional and that these distinctions effectuate important differing objectives carried out by the two individual provisions. *Burlington Northern*, 126 S. Ct. at 2412. The Court stated this "purpose reinforces what language already indicates, namely that the anti-retaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412-13. After finding that the two provisions are not coterminous, the Court stated that "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and is thereby not limited to "ultimate employment decisions." *Id.* at 2414.

Significantly, the Court endeavored to define the contours of this expansion by qualifying what type of retaliatory action rises to the level of being unlawful. In order to be unlawful, the retaliation must produce an injury or harm, the Court stated. *Id.* Adopting the tests used by the Seventh and District of Columbia Circuits, the Court stated that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The Court focused on the term "materially adverse" in order to separate trivial harms from actionable injuries because Title VII does not establish "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Furthermore, the Court adopted a reasonable employee standard because

"[a]n objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington Northern*, 126 S. Ct. at 2415.

Finally, the Court touched on an important component of this formulation: context matters. *Id*. To explain the importance of context, the Court quoted from *Oncale*, explaining that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at 81-82.

*Burlington Northern* necessarily impacts the instant case by altering the second prong of the prima facie case requirement. We discussed the impact of *Burlington Northern* in *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790 (10th Cir. 2007), where we noted that the second prong of the prima facie case requirement is replaced with the requirement "(2) that a reasonable employee would have found the challenged action materially adverse – that is, that the action might 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination . . . .'" 487 F.3d at 803 (quoting *Burlington Northern*, 126 S. Ct. at 2414-15). No longer must a plaintiff prove that subsequent "adverse employment action" was taken against her, as that phrase has been construed in Title VII discrimination cases. Rather the plaintiff must show that a reasonable employee would have found the action materially adverse such that they might be dissuaded from making a charge of discrimination. Even more recently, we

-8-

again discussed the thorny issue of the impact of *Burlington Northern* on employment

retaliation claim analysis in *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079 (10th

Cir. 2007). Consistent with our analysis of *Burlington Northern* here, and that in

*E.E.O.C. v. PVNF, L.L.C.*, we stated in *Williams* that

> Before *[Burlington Northern v.] White*, some circuits held that a claim for
> retaliation lies only when the employer effects an adverse action within the
> workplace. That is, the employee needed not only to suffer a materially
> adverse action, but the consequence of that action had to come in the
> employment context itself, in the form of a termination, demotion, or the
> like. By contrast, other circuits allowed claims to proceed when the
> employer's adverse action had consequences befalling the plaintiff outside
> the employment environment. Seeking to resolve this circuit split, the
> Court in *[Burlington Northern v.] White* sided with the latter school of
> thought, recognizing that "[a]n employer can effectively retaliate against
> an employee" for exercising his or her protected rights "by taking actions
> not directly related to his [or her] employment or by causing him [or her]
> harm *outside* the workplace."

497 F.3d at 1086-87 (internal citations omitted). Also, in *Williams v. W.D. Sports*, we

noted the direction from the Supreme Court in *Burlington Northern* that the test for

determining whether an action would have been considered material by an employee is

an objective test, asking how a reasonable employee would have interpreted or

responded to the action. *Id.* at 1088

### D. Analysis

#### 1. Engagement in protected activity

Appellants clearly engaged in various acts of protected activity by voicing their

concerns and complaints to their supervisors and superiors within the University of

Denver. As the Magistrate Judge correctly noted, informal complaints to superiors

-9-

constitute protected activity. *See Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). One example of the Appellants' protected activity can be found in their May 19, 2003, meeting with Dean Kvistad and Susan Lee, Director of the Office of Diversity & Equal Opportunity. At this meeting, the Appellants made clear their concerns about the environment of the workplace and their perceived disparate treatment by others in that workplace. This, along with other various instances of informal complaints to supervisors, satisfies prong one, the protected activity requirement. *Hertz*, 370 F.3d at 1015 (informal complaints about perceived unlawful discrimination constitute protected activity).

### 2. Objective standard of materially adverse action

Appellants' primary argument comes into play regarding the second prong. The second element, altered by *Burlington Northern*, requires that the subsequent or contemporaneous actions taken against the individuals who engaged in the protected activity would be considered by a reasonable employee to be material and adverse, thereby dissuading them from making a complaint about discrimination.

It is clear from the record that these Appellants were *not* dissuaded by the alleged material and adverse retaliatory conduct by the Defendants. They did not cease attempting to remedy what they perceived to be acts of discrimination. Thus, the alleged retaliation attempted has apparently been unsuccessful.

The Supreme Court made clear that the test for the second prong of a retaliation claim is an objective one. *Burlington Northern*, 126 S. Ct. at 2415. The Court stated:

-10-

In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace.

*Burlington Northern*, 126 S. Ct. at 2415 (emphasis in original and internal citations and quotation marks omitted). This reading is confirmed by our precedent in *Williams v. W.D. Sports, N.M., Inc.*, where we rejected the argument that a plaintiff alleging a retaliation claim must show "some tangible, subjective psychological or monetary injury. Such a requirement would make no sense of *[Burlington Northern v. ] White*'s emphasis on the need for an objective test. . ." 497 F.3d at 1090. We again reiterated that the focus of the question is on whether a reasonable employee "would have found the defendant's conduct sufficiently adverse that he or she well might have been dissuaded by such conduct from making or supporting a charge of discrimination. . ." *Id.*

Moreover, the fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable. We now apply these principles as spelled out in *Burlington Northern* to the instant case.[1]

### i. Incivility in the Department Meeting

---

[1]The subjects to be considered have been narrowed by the Appellants. Their counsel stated at argument before us, and confirmed by letter subsequently, that Appellants are waiving the issues of allegedly disproportionate workload and merit salary increases.

Appellants indicate that they were both offended by comments and actions of various individuals at a department meeting in late February 2003. Appellants claim that they were subjected to "extreme public humiliation." Aplt. Br. at 24. This meeting concerned hiring decisions within the department. Appellant Bornstein-Gómez described the humiliation in her deposition as individuals rolling their eyes and laughing at her opinion on the proper standards for making decisions. Aplt. App. 403. Appellant Somoza testified similarly, indicating that he was laughed at, snickered at, and individuals made comments to one another while he spoke at the meeting. Appellants also contend that they endured continued hostility by other individuals.

Conduct such as this, if pervasive enough, may in fact rise to the level of a materially adverse action. *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998)). However, our precedent tempers this by holding that "unruly behavior during a meeting" and derogatory e-mails are unlikely to deter a reasonable employee from making a charge of discrimination. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1318 (10th Cir. 2006) (citing *Burlington Northern*). Moreover, the Supreme Court cited the EEOC manual in *Burlington Northern* when it reasoned that a "lack of good manners will not create such deterrence" necessary to constitute material adverse action capable of dissuading a reasonable employee from making a complaint about discrimination. *Burlington Northern,* 126 S. Ct. at 2415 (citing 2 EEOC 1998 Manual §

8, p. 8-13) (internal quotation marks omitted).[2]

Therefore, without more, Appellants have not thereby met the standard of the second prong to this point.

## ii. Decision-making Authority

Appellants also indicate that they have been stripped of various powers within the Department. They claim that their initial recommendation regarding the suspension of the search committee's suggestion, which ultimately led to the hiring of Susan Walter, was reversed. The search began in 2003 and the committee evaluating the qualifications of the candidates consisted of Appellant Somoza, Professor O'Neil, and Chair Beaudoin. Aplt. App. 1112, 57: 5-18. In Appellants' brief, they claim that Chair Beaudoin allowed another junior professor, Javier Torre, to be disrespectful towards them. Also, Appellants claim that roughly 10 days after they expressed their position on the lack of qualifications of applicants, a lecturer position was taken away and their recommendation was reversed by a department vote.

The initial search committee, which recommended suspension of the search, included one of the Appellants, Professor Somoza. The decision, at the departmental meeting which both Appellants attended, was overturned by a majority vote, and the vote

[2]*See also Duncan v. City & County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) ("angry outburst" of co-worker and "general ostracization by other officers" did not support retaliation claim); *Peterson v. Utah Dept. of Corr.*, 301 F.3d 1182, 1190 (10th Cir. 2002) ("ridicule . . . by fellow workers" did not support retaliation claim). We note that these cases decided before *Burlington Northern* appear consistent with that case's adherence to the principle that mere rudeness is not ordinarily actionable.

reversed the recommendation of the search committee, not that of the Appellants individually or together. Thus, since the department vote reversed the decision of the committee, and not that of the Appellants, this particular action is insufficient to meet the standard of *Burlington Northern* because the Appellants were not specifically and individually affected – the entire search committee's decision was reversed. There are no facts produced that indicate Appellants were targeted specifically. Moreover, the subjective injuries, like a bruised ego, allegedly sustained by Appellant Somoza do not rise to the level of dissuading a reasonable worker from making or supporting a charge of discrimination. *See also Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (professor's "bruised ego" due to revocation of his "mentor status" is not an adverse action). [3]

After the departmental vote, the search committee reconvened, including the same members of the committee, and was instructed to either vote for one of the two candidates or vote for neither. Aplt. App. 1193-94. Ultimately, the reconvened search committee voted unanimously to hire Susan Walter. Again, this unanimous vote was an action taken by the search committee as a whole rather than a decision made by the Appellants individually. Further, Professor Somoza sat on both search committees and exercised a vote which both times corresponded to the ultimate decision of the committee. It is difficult to see how Appellants were singled out or targeted in these instances; Appellants have produced no evidence indicating that they were individually

---

[3]Again, this pre-*Burlington Northern* precedent appears to retain its vitality.

targeted in some fashion on these committees, nor have they explained how serving on both committees and exercising a vote represents a diminution of their decision-making powers.

Appellants take issue with the search process initiated in 2004. They claim that Chair Beaudoin convened no search committee, thereby denying them a right to participate in the selection of a Spanish lecturer. However, Appellant Somoza testified that "[t]here was a meeting at some point, and we were asked if we would accept Wendy for the position. I said yes." Aplt. App. 1132. Professor Bornstein-Gómez testified that there was no committee but that she was asked if she would accept Ms. Mendez for the position; she also said that the hiring decision was one of "consensus" and that a meeting took place. Aplt. App. 1131-32. Regardless of whether the presence or absence of a formal or informal search committee violates Departmental procedure or by-laws, any action did not target Appellants specifically as individuals – it affected them as members of the Spanish Section. Furthermore, the Appellants testified that their opinions were considered. Thus, Appellants have failed to provide facts that satisfy the second prong of the prima facie test relating to their treatment while on the search committees.

Appellants also allege that Dean Kvistad removed a lecturer position from the Spanish Section on February 26, 2003. This claim, Appellants argue, impacts both their workload and their decision-making power. While touching on workload, this claim is not waived by the Appellants because their argument centers on whether they might have been deterred due to the fear of an increased workload. Primarily, this claim involves

the hiring of Wendy Mendez into the temporary lecturer position formerly held by Susan Walters. Specifically, the Appellants contend that the funding for the non-temporary position, previously occupied by Wendy Mendez, was eliminated by Dean Kvistad. The record indicates that at various times there was some confusion as to the character of Ms. Mendez's position. Indeed, it seems as though she was hired at three different times. However, the basis of Appellants's claim is the elimination of funding.

As depositions from both Prof. Somoza and Prof. Bornstein-Gomez make clear, Ms. Mendez was shuffled through various temporary and non-temporary positions well after the alleged removal date of February 26, 2003. There are two issues: whether Appellants have shown that the funding was lost and whether the funding lost was for a temporary or non-temporary position. This is because, as the record shows, temporary position funding is lost by attrition whereas non-temporary position funding is lost by a departmental decision. If the funding lost was due to Ms. Mendez being hired into a new position, rather than a departmental decision, then Appellants's claim fails. Furthermore, even if the funding lost stemmed from a non-temporary position, Appellants would have to show that they were targeted specifically by this action. On its face, a departmental decision to remove a non-temporary lecturer position would affect the entire Spanish Section as a whole, not just the Appellants. Thus, Appellants would have to show that this conduct sought them out individually.

From various statements made by Prof. Bornstein-Gomez and by Chair Beaudoin, the record bears out that the position in question was temporary and may not have been

lost at all. Appellants provide no clear evidence indicating that the position was lost in February of 2003 nor do they show that it was non-temporary. Thus, since the position allegedly lost was a temporary one it therefore occurred due to attrition and consequently, Appellants's claim fails.

Finally, with regard to allegations of intentionally diminishing Appellants' decision-making authority, Appellants argue that Professor Bornstein-Gómez was precluded from selecting the Basic Language Coordinator for the Spanish Section. Ms. Zulema López was selected as the temporary coordinator when Susan Walter was on parental leave. Appellants contend that long-standing practice in the department mandates that the Section Coordinator, a position held by Appellant Bornstein-Gómez at this time, be consulted in making these decisions. It is clear from the record that Professor Bornstein-Gómez did not have the determinative opinion on who should fill the basic language coordinator position. In her testimony, she stated that it was correct that her voice would have been one of several in the department taken into consideration. Furthermore, in an e-mail referencing the decision concerning a language coordinator, Appellant Bornstein-Gómez put forward three possible solutions for assigning the duties of the coordinator. One of these possibilities was Zulema López, and Professor Bornstein-Gómez said in the same e-mail that she was not advocating any particular person but was most interested in maintaining a quality program. Aplt. App. 1154. Thus, it would seem Bornstein-Gómez did in fact offer her opinion in accordance with long-standing departmental practice. However, the fact that her suggestion was not

ultimately followed does not establish that she suffered a diminution of her powers that might well dissuade a reasonable faculty member from making or supporting a charge of discrimination.

### iii. Work Environment

Appellants argue that Professor Javier Torre, an untenured junior colleague, harassed them in retaliation for their protected activities. Appellants cite an affidavit provided by another colleague, Professor Ralph DiFranco. Professor DiFranco states that Professor Torre "displayed an air of superiority," associated with faculty other than Appellants, wrote critical e-mails, was rude and failed "to interact collegially at meetings or even greet them in the department." Aplt. App. 620. Also, Appellants provide confirmatory accounts of Professor Torre's unprofessional behavior in an affidavit from Wendy Mendez. She referred to Professor Torre's behavior as "disrespectful, defensive and disregarding" and said that he was "uncooperative at Spanish section meetings and in other situations." Aplt. App. 643.

Appellants may have had to withstand colleagues that do not like them, are rude, and may be generally disagreeable people. However, this court's obligation is not to mandate that certain individuals work on their interpersonal skills and cease engaging in inter-departmental personality conflicts. Furthermore, Professor Torre is in terms of seniority, junior to the Appellants and his conduct would be less likely to deter a reasonable employee from making a complaint for fear of repercussions.

We do not wish to trivialize the difficulty that may have been subjectively felt by

the Appellants.  However, the conduct described is not indicative of the pervasively

hostile work environment necessary to survive the objective test of the second prong of

the prima facie case standard.  See *Gunnell v. Utah Valley State College*, 152 F.3d 1253,

1264 (10th Cir. 1998); *Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1280

(10th Cir. 2005) (stating that courts "should filter out complaints attacking the ordinary

tribulations of the workplace"); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857-58

(10th Cir. 2000) (affirming dismissal of hostile environment claim because co-worker

acting "chilly" toward plaintiff was not sufficiently severe or pervasive).[4]

### iv.  Section Coordinator Compensation

Appellant Bornstein-Gómez argues that she was disparately denied compensation

for taking on the duties of section coordinator.  She testified that these duties were

voluntary, but she fails to show that other section coordinators within the department

were provided compensation for those same duties.  Aplt. App. 1129.  Appellant

Bornstein-Gómez specifically states that the French section, also within the same

department as the Spanish section, has a section coordinator that is not compensated for

assuming those extra responsibilities.  This statement is confirmed in an affidavit by

Chair Beaudoin.  Aplt. App. 1151.  Similar to the circumstance in *Williams v. W.D.*

*Sports, N.M., Inc.*, where the plaintiff made a claim of economic loss, our record does

not indicate any monetary loss.  497 F.3d at 1088.  Therefore, there is no actionable

disparate treatment here.

---

[4]See n.2, *supra*.

### v. Spanish Section Abolishment and Changes

Appellants next contend that the Spanish section was abolished by Chair

Beaudoin. In an affidavit, Chair Beaudoin stated that he explained to Professor

Bornstein-Gómez that "the Spanish section did not exist as its own entity, but was

simply one unit within a department of Languages and Literatures. I never said that the

Spanish section did not exist. That would be an illogical statement since the Spanish

program exists at [the University of Denver] even today." Aplt. App. 1151. With

respect to any changes in the Spanish section, any section-wide alterations would be felt

by all members of the section, faculty, administrative staff, and lecturers. Thus, changes

such as these would be insufficient to meet the second prong of the prima facie case test

because they did not target the Appellants specifically.[5]

### vi. Aggregation of Claims

Finally, the Appellants argue that, as suggested in *Stover v. Martinez*, the

aggregation of actions may rise to the level of being material and adverse. 382 F.3d at

1071. At the outset, however, we note that a number of claims affect the Spanish section

as a whole rather than affecting specifically the Appellants. They are therefore similarly

situated with other members of the Spanish section, not all of whom are members of a

protected class. We do not foreclose the possibility that an employer action which

---

[5] Any claims that Appellants may have against Chair Pap regarding any alleged improper reorganizations of the Spanish Section and the Department are not yet exhausted as they were raised in a third EEOC complaint filed after this lawsuit commenced.

affects an entire group, composed of both members of a protected class and non-protected class members, may be retaliatory towards a single individual who is a member of a protected class. However, it is quite possible that such an argument may indeed be more difficult to prove. In the instant case, the employer's actions were typical of those in an academic environment and therefore not materially adverse under *Burlington Northern*.

Appellants have waived the issues of increased workload and low merit salary increases, as noted earlier. We have no doubt that having to address the individual personalities in a work environment may be daunting at times. However, it cannot be said that negative comments, condescending looks, perceived exclusion from hiring and firing decisions, and a reduction in the administrative authority within the department aggregate to produce material and adverse actions against these Appellants. Therefore, we find that the Appellants have failed to satisfy their burden under *Burlington Northern* of presenting a prima facie case of employment retaliation.

## IV. CONCLUSION

Despite the testimony that the Appellants endured various instances of incivility, rudeness, and allegedly offensive statements regarding their ethnicity and national origin Appellants have not shown that the summary judgment was in error. *Burlington Northern* did not alter the legal landscape of employment retaliation claims so as to create a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. at 80. Even in the aggregate, the instances of allegedly

adverse and material actions against the Appellants do not meet the requirements of *Burlington Northern*.

Accordingly, the judgment is **AFFIRMED**.