Argued and submitted January 13, reversed, in part, and remanded for reconsideration; otherwise affirmed December 29, 2010

# PORTLAND STATE UNIVERSITY CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *Respondent,*

*v.*

# PORTLAND STATE UNIVERSITY, *Petitioner.*

Employment Relations Board
UP3605; A138895

246 P3d 1162

Jeff J. Payne, Assistant Attorney General, argued the cause for petitioner. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Elizabeth A. Joffe argued the cause for respondent. With her on the brief was McKanna Bishop Joffe & Arms, LLP.

Before Sercombe, Presiding Judge, and Wollheim, Judge, and Riggs, Senior Judge.

WOLLHEIM, J.

Sercombe, P. J., dissenting.

## WOLLHEIM, J.

The Portland State University Chapter of the Association of University Professors (Association) represents academic professionals employed by Portland State University (PSU). The Association and PSU entered into a collective bargaining agreement that established a grievance process for dispute resolution (CBA). One provision of the CBA allowed PSU to decline to use that grievance process after a member of the Association sought resolution of the grievance from an administrative agency or in a court. Here, a member of the Association alleged gender discrimination in complaints filed with the Equal Employment Opportunity Commission (EEOC) and the Bureau of Labor and Industries (BOLI). Thereafter, PSU declined to use the grievance process. The Association filed an unfair labor practice complaint with the Employment Relations Board under ORS 243.672(1)(g), alleging that PSU's refusal to enter into the grievance process constituted unlawful retaliation under ORS 659A.030(1)(f) and Title VII of the Civil Rights Act of 1964, specifically, 42 USC section 2000e-3(a). The board agreed with the Association and ordered PSU to submit to the grievance process. PSU seeks judicial review of that order. We agree with PSU that the board erred in ordering PSU to submit to the grievance process because it applied the wrong standard. Accordingly, we reverse, in part, and remand for reconsideration.[1]

The following facts are undisputed. The CBA defined a grievance process to resolve disputes that arose between the Association and PSU. The grievance process established deadlines for the filing of grievances, provided for various stages of informal and formal negotiations involving the Association and PSU, and, ultimately, granted the Association the right to submit grievances to binding arbitration. However, the agreement allowed PSU to withdraw from the grievance process if a member sought resolution of the same matter through alternative channels. Specifically, Article 28.B.2 of the agreement provided:

---

[1] In addition, the board ruled that PSU violated ORS 243.672(1)(e) when it failed to provide a report to the Association and ordered PSU to provide the report. On judicial review, PSU does not challenge that ruling. We affirm the board's ruling on that issue without further discussion.

**"Resort to Other Procedures.** If, prior to seeking resolution of a dispute by presenting a grievance hereunder, or while the grievance proceeding is in progress, a member seeks resolution of the matter through any agency outside [PSU], whether administrative or judicial, [PSU] shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure or pursuant to Division C (ARBITRATION) of this Article."

(Boldface and capitalization in original.)

Wilson was employed on annual fixed-term contracts as a faculty member from September 1998 through August 2004 and was a member of the Association. In the fall of 2003, Wilson met with her department head on behalf of a colleague who had accused a third faculty member in the department of sexual harassment. Thereafter, PSU informed Wilson that her contract would not be renewed and, later that academic year,Wilson came to believe that she suffered discrimination in retaliation for her support of her colleague's claims. Wilson then filed a complaint with PSU's Office of Affirmative Action and Equal Opportunity (AA/EO office) and spoke with the Association about filing a grievance under the CBA.

While the Association investigated whether to pursue a grievance, the AA/EO office completed its investigation and issued a report recommending that PSU take no action on Wilson's complaint. PSU adopted that recommendation. The Association requested a copy of the report, which PSU declined to provide based on confidentiality and relevance.

In February 2005, the Association filed a grievance under the CBA, alleging that PSU had improperly failed to provide a copy of the AA/EO report. Separately, Wilson filed an intake questionnaire with the EEOC in pursuit of a potential gender discrimination action against PSU. The Association informed PSU that Wilson had filed an EEOC complaint. PSU then notified the Association that it would not process the grievance because Wilson had sought resolution through an outside agency. PSU relied on Article 28.B.2. The Association responded that Article 28.B.2 was illegal and unenforceable.[2]

---

[2] Wilson mistakenly believed that the questionnaire she had completed was a complaint, and the Association relied on her belief when it informed PSU that

Wilson then filed a complaint with BOLI, alleging that her nonrenewal was discriminatory and retaliatory. Subsequently, the Association filed a second grievance, alleging that the nonrenewal of Wilson's contract was discriminatory and retaliatory. PSU again refused to process that grievance, relying on Article 28.B.2.

The Association filed a complaint with the board and sought declaratory relief, asserting that PSU's failure to comply with the grievance process violated ORS 243.672(1)(g), which provides that "[i]t is an unfair labor practice to * * * [v]iolate the provisions of any written contract with respect to employment relations, including an agreement to arbitrate."[3] Citing Article 28.B.2, PSU countered that it did not violate any contractual provision because it had never agreed to process any grievances involving a matter that was also submitted to an outside agency such as EEOC or BOLI. The Association responded that Article 28.B.2 of the CBA was not enforceable because it sanctioned discrimination against an employee who has filed a discrimination complaint, citing Title VII of the Civil Rights Act of 1964, specifically, 42 USC section 2000e-3(a), and ORS 659A.030(1)(f).

The board concluded that "[u]nder the express and unambiguous terms of the collective bargaining agreement, * * * [PSU] had no contractual obligation to further process the grievance once Wilson commenced EEOC proceedings." However, the board agreed with the Association that Article 28.B.2, by allowing the employer to penalize an employee who chooses to seek resolution of a discrimination claim, "constitutes unlawful retaliation under both state and federal law." Consequently, the board concluded that Article 28.B.2 was "unenforceable as applied" to Wilson's grievances and that PSU's refusal to process Wilson's grievances

Wilson had filed an EEOC complaint. The EEOC subsequently determined that any complaint based on Wilson's questionnaire would be untimely.

[3] The Association also sought orders requiring PSU to enter into collective bargaining to renegotiate the terms of Article 28.B.2, ORS 243.702(1), and to disclose the investigation report of the AA/EO office. The board did not order PSU to enter into collective bargaining over the terms of Article 28.B.2, but did order PSU to disclose the investigation report. Only the second grievance filed by the Association is at issue on judicial review.

violated ORS 243.672(1)(g). Consequently, the board ordered PSU to process the grievances.

PSU seeks judicial review of the order of the board, raising two assignments of error. First, PSU argues that the board erred by failing to dismiss the complaint because it lacked the authority to determine that Article 28.B.2 constituted retaliation. Second, PSU argues that the board erred in concluding that Article 28.B.2 was illegal and unenforceable and, on that basis, erred in ordering PSU to enter into the contractual grievance process. The Association counters that the board had the authority to interpret the contract and that Article 28.B.2 constituted unlawful retaliation. As explained below, we agree with the Association that the board had authority over the contract dispute claim. But we agree with PSU that the board erred in ordering PSU to process the grievance because it applied the wrong standard.

■ Under its first assignment of error, PSU asserts that, because the Association's unlawful labor practice complaint was predicated upon ORS 243.672(1)(g), the board was limited to considering whether the board's refusal to process the grievances "[v]iolate[d] the provisions of any written contract" under ORS 243.672(1)(g). PSU argues that the board had no authority to "determin[e] that an employer has retaliated against an employee under Title VII or ORS 659A.030(1)(f)."[4]

The Association has correctly identified the problem with PSU's argument: PSU confuses the board's authority to declare a contractual term unenforceable with the board's authority to find liability under state and federal antidiscrimination laws. The board did not decide whether Wilson or the Association is entitled to a *remedy* under either Title VII or ORS 659A.030(1)(f). Rather, the board determined that Article 28.B.2 was not *enforceable* because Article 28.B.2 "cannot lawfully apply to Title VII complaints."

---

[4] The Association argues that PSU failed to properly preserve this assignment of error. After reviewing the parties' arguments, we conclude that PSU adequately preserved this assignment of error and, therefore, consider the merits of PSU's argument.

The board has the authority to determine whether a public employer has engaged in an unfair labor practice. ORS 243.676(2). The legislature has defined an unfair labor practice under ORS 243.672(1)(g) to include the "[v]iolat[ion of] the provisions of any written contract * * * including an agreement to arbitrate." PSU does not argue that the board lacks the authority to declare unenforceable any contractual provision that is in conflict with other provisions of statutory law—including Title VII and ORS 659A.030(1)(f). In fact, the legislature contemplated that the board would have such authority. *See* ORS 243.702(1) (contemplating circumstances under which the terms in "a collective bargaining agreement are declared to be invalid * * * by the Employment Relations Board"). Consequently, we conclude that the board had statutory authority to determine whether Article 28.B.2 of the CBA, permitting PSU to avoid the grievance procedure, was an enforceable contractual provision. For that reason, we reject PSU's first assignment of error.

Next we consider PSU's second assignment of error: the correctness of the board's legal conclusion that "the provisions of Article 28.B.2 are unenforceable as applied to the Wilson grievance." We review that conclusion for errors of law. ORS 183.482(8)(a). As the board recognized, the issue of whether a collective bargaining agreement may permit an employer to withdraw from a contractual grievance procedure solely because an Association member filed a discrimination complaint with the EEOC or BOLI presents an issue of first impression for Oregon appellate courts.

Although the board cited both federal law, 42 USC section 2000e-3(a), and state law, ORS 659A.030(1)(f), in reaching its conclusion that Article 28.B.2 is unenforceable as applied in this case, the board's reasoning and analysis depended entirely on the federal statute. Before the board, the Association cited ORS 659A.030(1)(f)[5] only in its post-trial brief and did not develop any argument under the state statutory framework. On appeal, the Association similarly does not develop any separate argument that relies on the

---

[5] ORS 659A.030(1)(f) defines an unlawful employment practice as including discriminating against any employee because that employee filed a complaint under ORS chapter 659A.

state statute. Rather, the Association argues that "discrimination and retaliation claims under ORS 659A.030 are subject to the *same* legal standards as those under Title VII." (Emphasis added.) Consequently, as the issue is framed by the Association, this case depends on whether federal employment law bars the enforceability of Article 28.B.2.

■■ Title VII protects against employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 USC § 2000e-2(a). In particular, 42 USC section 2000e-3(a) makes it "an unlawful employment practice for an employer to discriminate against any * * * employee[ ] * * * [who has] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." To demonstrate that an employer has unlawfully discriminated—that is, retaliated against an employee—under 42 USC section 2000e-3(a), the aggrieved employee must prove three facts:

> "(1) the [employee] engaged in protected activity opposing discrimination; *(2) the [employee] experienced a materially adverse action, that is, an action that a reasonable employee would find materially adverse*; and (3) a causal connection exists between the protected activity and the adverse action. *Somoza v. University of Denver*, 513 F3d 1206, 1212 (10th Cir 2008)."

*Steele v. Mayoral*, 231 Or App 603, 616, 220 P3d 761 (2009) (emphasis added). The employee has the ultimate burden of persuasion as to each element of a retaliation claim. *St. Mary's Honor Center v. Hicks*, 509 US 502, 511, 113 S Ct 2742, 125 L Ed 2d 407 (1993).

■■ On review, PSU argues that the Association did not make an adequate showing as to the second of the requisite three facts: that PSU's refusal to process Wilson's grievance was a materially adverse action. To establish retaliation, the adverse action need not affect the terms or conditions of employment, but the adverse action must be *material*. *Burlington N. & S. F. R. Co. v. White*, 548 US 53, 64, 68, 126 S Ct 2405, 165 L Ed 2d 345 (2006). Accordingly, not all adverse actions give rise to retaliation claims; an adverse action is material only if it is "likely to dissuade employees

from complaining or assisting in complaints about discrimination." *Id.* at 70. That is an objective standard, assessed from the likely impact that an employer's acts may have on a reasonable employee. *Id.* at 68.

The determination whether an adverse act is material distinguishes "significant from trivial harms"; an adverse act gives rise to an actionable retaliation claim only if, from the perspective of a reasonable person, the adverse action rises to a "level of seriousness" that would deter someone from complaining about discriminatory practices. *Id.* at 67-68; *see also Steele*, 231 Or App at 618-19 (distinguishing trivial and significant adverse actions). An adverse action gives rise to actionable retaliation only if the adverse action is so serious that it would dissuade a reasonable employee from bringing a discrimination action in the first instance. *See Burlington*, 548 US at 67-68. Thus, whether Article 28.B.2 sanctions a materially adverse action depends on whether PSU's decision to decline to enter into a grievance process after an employee complains about discrimination is likely to dissuade a reasonable employee from making such a complaint in the first instance.

 Central to that analysis is the legal significance of the grievance process that PSU declined to enter. As the United States Supreme Court has explained, a right to antidiscrimination established under a *contract* may differ from the right to antidiscrimination established by *statute*. *14 Penn Plaza LLC v. Pyett*, ___ US ___ , ___ , 129 S Ct 1456, 1468-69, 173 L Ed 2d 398 (2009). In addition, a contract cannot prospectively waive an employee's substantive statutory antidiscrimination protections. *Id.* at 1469. Thus, where a contract provides a grievance or arbitration process to resolve disputes concerning claims of discrimination, the grievance or arbitration process does not have preclusive effect over any *statutory* claims unless the contract expressly incorporates the statutory law. *Id.* at 1468-69. Here, the CBA does not expressly incorporate the *statutory* law. Accordingly, the adversity of PSU's decision under Article 28.B.2 to decline to enter into the grievance process was limited to Wilson's *contractual* right to the grievance process.

■ Within the context of the *Burlington* standard, we similarly conclude that a reasonable employee would not likely be dissuaded from filing a discrimination complaint because an employer defends against the complaint by seeking to consolidate the resolution of the matter into one proceeding. Accordingly, in order to establish that PSU's reliance on Article 28.B.2 constitutes unlawful retaliation, the Association must show that Article 28.B.2 does something more than allow PSU to undertake such a defensive measure.[6]

The board did not address the *Burlington* standard. Rather, the board relied on numerous cases that were decided by various federal courts *before* the Supreme Court enunciated the material adverse action standard in *Burlington*. Nor could the board address the rule announced in *14 Penn Plaza LLC* because the Supreme Court decided that case *after* the board's decision in this case.

Nonetheless, the Association argues that the board's reliance on various pre-*Burlington* federal cases was correct, because this case involves a facially discriminatory policy, whereas *Burlington* involved an individual claim of retaliation. However, nothing in either the antiretaliation statute, 42 USC section 2000e-3(a), or the Supreme Court's opinion in *Burlington* suggests that the antiretaliation provision would be applied differently under those circumstances. Accordingly, we reject the Association's argument.

Because the board did not apply the standard of material adversity in determining whether Article 28.B.2 is unenforceable under 42 USC section 2000e-3(a), and because the board did not have the opportunity to consider the impact

---

[6] The dissent suggests that *14 Penn Plaza* supports the proposition that, where an employer exercises its rights under the undisputed terms of an arbitration provision, the employer subjects the employee to a materially adverse consequence. *See* 230 Or App at 122 (Sercombe, J., dissenting) ("[T]he bargained-for collective right to grieve discrimination claims is a valuable one; axiomatically, a valuable right will be prized by a reasonable employee in the sense of protecting that right from loss."). We do not share that understanding of *14 Penn Plaza LLC*, which holds that a contract to arbitrate disputes is enforceable. Here, where the parties agree that, under Article 28.B.2, they agreed to grieve under limited conditions, we are remanding to the board to determine whether Article 28.B.2 does something more. And, if so, whether that is materially adverse under the standard set forth in *Burlington,* 548 US at 64.

of *14 Penn Plaza LLC*, we reverse and remand for reconsideration under the appropriate standard.[7]

Reversed, in part, and remanded for reconsideration; otherwise affirmed.

**SERCOMBE, P. J.,** dissenting.

With respect, I am unable to agree with the views of my colleagues and am compelled to dissent. I disagree with the test proposed by the majority for whether the "resort to other procedures" (ROP) provision in the collective bargaining agreement is lawful under 42 USC section 2000e-3(a). That statute makes it "an unlawful employment practice for an employer to discriminate against any * * * employee[ ] * * * [who] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." On its face, the ROP provision "discriminates" against, or treats differently, employees who make a charge to the Equal Employment Opportunity Commission (EEOC) from those employees who do not complain. That different treatment is that the former group of employees loses a contractual right to grieve a discrimination claim and the latter group retains that right. There is little question that the contractual right to grieve a discrimination claim is significant, and the loss of that right of the union representing an employee would be adverse to the employee's interests. Therefore, the ROP provision is unlawful as a matter of law because it penalizes the exercise of a federal statutory right by taking away a significant contractual right if the federal remedy is invoked.

That was the logic adopted by the Employment Relations Board (board) in the order under review. The board

---

[7] The dissent criticizes our holding as unclear, asking whether we are holding that "loss of a grievance contract right is not 'materially adverse' " or that the board must "engage in some factfinding on remand in order to apply the 'appropriate standard.' " 240 Or App at 121 (Sercombe, J., dissenting). To be clear, the board erred in ordering PSU to submit to the grievance process because it applied the incorrect standard in determining whether Article 28.B.2 is unenforceable under 42 USC section 2000e-3(a). We reverse and remand so that the board may apply the correct standard as enunciated in *Burlington.* ORS 183.482(8)(a)(B). *Cf. Nakashima v. Board of Education*, 344 Or 497, 185 P3d 429 (2008) (concluding that the Board of Education applied an incorrect legal standard and remanding to the board to apply the correct standard).

relied on *E.E.O.C. v. Board of Governors of State Colleges*, 957 F2d 424 (7th Cir), *cert den*, 506 US 906 (1992), a case presenting a nearly identical question to the issue raised in this case. In *Board of Governors of State Colleges*, the EEOC challenged the legality of a ROP-type provision in a collective bargaining agreement between a university and its employees under an antiretaliation section of the Age Discrimination in Employment Act (ADEA). 957 F2d at 426. That part of the ADEA, 29 USC section 623(d), provided:

> "It shall be unlawful for an employer to discriminate against any of his employees * * * because such individual * * * has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

The EEOC questioned the lawfulness of Article 17.2 of the collective bargaining agreement, which read:

> "If prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure."

*Board of Governors of State Colleges*, 957 F2d at 426.

The court found that application of Article 17.2 would necessarily violate the antiretaliation section of the ADEA:

> "Under the collective bargaining agreement between the Board and the Union, an employee has a contractual right to an in-house grievance procedure. However, an employee loses that right if he files a charge of discrimination. Article 17.2 authorizes the Board to take an adverse employment action (termination of the in-house grievance proceeding) for the sole reason that the employee has engaged in protected activity (filing an ADEA claim). Under Article 17.2, an employee must forfeit his contractual right to a grievance proceeding, a condition of his employment, or surrender his legal right to participate in litigation under the ADEA."

*Board of Governors of State Colleges*, 957 F2d at 429-30. The court treated Article 17.2 as a retaliatory policy, and unlawful *per se*, without regard to the good faith of the university or the particular characteristics of an individual application of Article 17.2. *Id.* at 430-31.

The majority eschews this analysis, apparently reasoning that the loss of a contractual right to grieve a dispute is not an adverse employment action. The opinion assumes that the standard for assessing the legality of an employment policy under the antiretaliation section of Title VII of the Civil Rights Act of 1964, 42 USC section 2000e-3(a), is the same as the test used by courts to evaluate the validity of an individual claim for retaliation. *See* 240 Or App at 116. The test for an individual claim for retaliation is that an aggrieved employee must show that (1) the employee engaged in protected activity under the statute ("made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"); (2) the employee experienced a materially adverse action, one that a reasonable employee would find materially adverse; and (3) the protected activity caused the adverse action. *Somoza v. University of Denver*, 513 F3d 1206, 1212 (10th Cir 2008).

In *Burlington N. & S. F. R. Co. v. White,* 548 US 53, 67, 126 S Ct 2405, 165 L Ed 2d 345 (2006), the Supreme Court determined that a materially adverse action could include actions "beyond workplace-related or employment-related retaliatory acts and harm." However, in determining the "level of seriousness to which this harm must rise before it becomes actionable retaliation" and "to separate significant from trivial harms," the Supreme Court explained that

> "a reasonable employee would have [to find] the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Id.* at 67-68 (citation and internal quotation marks omitted).

Based on *Burlington N. & S. F. R. Co.*, the majority appears to conclude that enforcement of the ROP provision is not materially adverse to a reasonable employee because that employee "would not likely be dissuaded from filing a

discrimination complaint because an employer defends against the complaint by seeking to consolidate the resolution of the matter into one proceeding." 240 Or App at 117. The majority seems to say that the board was wrong to find the ROP provision to be unlawful. But then it remands to see if the board agrees with its conclusion: "Because the board did not apply the standard of material adversity in determining whether Article 28.B.2 is unenforceable under 42 USC section 2000e-3(a), * * * we reverse and remand for reconsideration under the appropriate standard." 240 Or App at 117-18 (footnote omitted).

In my view, there are a number of problems with that analysis. First, it is not clear what the majority is deciding—was the board wrong as a matter of law in concluding that loss of a grievance contract right is not "materially adverse" (because, as the majority concludes, an employee "would not likely be dissuaded from filing a discrimination complaint") or must the board engage in some factfinding on remand in order to apply the "appropriate standard" (presumably whether a reasonable employee would be dissuaded from engaging in protected activity) in order to resolve the "materially adverse" issue?

Second, I am not persuaded that the same legal test is used to assess the legality of an employer *policy* under the antiretaliation statute as is used to determine whether an employee has a retaliation claim based on an a particular employer *action*. It seems to me that if an employer policy categorizes employees on a facially impermissible basis (those who engage in protected activities and those who do not) and then attaches *any* adverse consequence to those in the protected class as matter of course, that should be enough to vitiate the policy. Suppose an employer adopts a policy that all employees are to shun any of their colleagues who files an EEOC complaint during the week after that filing. In my view, that policy would be unlawful under 42 USC section 2000e-3(a) because it is targeted at the protected conduct, even if, in an individual case, the shunning might not have dissuaded a reasonable employee from filing the claim. I understand that the case law neither confirms nor precludes the employment policy/action distinction that I make.

More importantly, however, in my view, there is no question that the loss of a bargained-for employment right in a collective bargaining agreement is both an adverse and material consequence under any test. It is adverse because it is the loss of an advantage—the right to an efficient and prompt dispute resolution mechanism—that is contractually secured. The loss is material because it is functionally significant as well as the result of collective bargaining. In *14 Penn Plaza LLC v. Pyett*, ____ US ____ , 129 S Ct 1456, 1464, 173 L Ed 2d 398 (2009), the Supreme Court underscored the importance of grievance arbitration provisions in collective bargaining agreements:

> "In this instance, the Union and the RAB, negotiating on behalf of 14 Penn Plaza, collectively bargained in good faith and agreed that employment-related discrimination claims, including claims brought under the ADEA, would be resolved in arbitration. This freely negotiated term between the Union and the RAB easily qualifies as a 'conditio[n] or employment' that is subject to mandatory bargaining under § 159(a) [of the National Labor Relations Act]. See *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 199, 111 S. Ct. 2215, 155 L. Ed. 2d 177 (1991) ('[A]rrangements for arbitration of disputes are a term or condition of employment and a mandatory subject of bargaining'); *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ('[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself'); *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 455, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957) ('Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike')."

That context drawn by the Court illustrates that the bargained-for collective right to grieve discrimination claims is a valuable one; axiomatically, a valuable right will be prized by a reasonable employee in the sense of protecting that right from loss. That necessarily means that a reasonable employee might well be dissuaded from taking actions that result in the loss of valuable grievance rights, such as making or supporting a claim of discrimination. That legal quality of grievance rights—the *quid pro quo* for an agreement not to strike—necessarily makes the loss of those rights material for purposes of 42 USC section 2000e-3(a).

I cannot support the majority's conclusion that loss of grievance rights is immaterial or its instruction to the board to think about it some more. To me, the opposite conclusion is necessary, and the board's order should be affirmed. For those reasons, I dissent.