**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ABEER FARAGALLA,

  Plaintiff-Appellant,

v.

DOUGLAS COUNTY SCHOOL
DISTRICT RE 1; DOUGLAS
COUNTY SCHOOL DISTRICT
BOARD OF EDUCATION;
DOUGLAS COUNTY FEDERATION
FOR CLASSIFIED EMPLOYEES;
CEREBRAL PALSY OF
COLORADO, INC.,

  Defendants-Appellees.

Nos. 09-1393 and 10-1433
(D.C. No. 1:07-CV-02584-REB-BNB)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **GORSUCH**, Circuit Judges.

Abeer Faragalla filed a pro se action against two of her former employers

and a union, alleging various claims related to her previous employment. The

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted summary judgment in favor of defendants on a majority of the claims and declined to exercise supplemental jurisdiction over the remaining state-law claims. The court subsequently awarded defendants their costs. In these companion pro se appeals, Ms. Faragalla challenges the district court's orders granting summary judgment and awarding costs. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Ms. Faragalla worked for Cerebral Palsy of Colorado, Inc. (CP) for several months in 2002. After CP terminated her employment in September 2002, she filed a complaint against CP with the Equal Employment Opportunity Commission (EEOC). She alleged retaliation and discrimination based on her Egyptian national origin. Although she received a right-to-sue letter from the EEOC, Ms. Faragalla did not file an action against CP within 90 days.

Beginning in August 2005, Ms. Faragalla was employed by Douglas County School District (DCSD). She worked at Iron Horse Elementary School (Iron Horse) as an Educational Assistant (EA) for students with special needs. In February 2006, DCSD rated her job performance as "Meets Expectations." R., Vol. 2 at 418. Comments to her written evaluation stated, "Goals for Abeer include developing a positive relationship with her co-workers" and "a goal for her is to realize that interruptions and changes of plans always occur and she needs to follow through with these additional requests." *Id.* at 417. In the

following school year, Ms. Faragalla's workload increased when she was assigned to work with more than one special-needs student. That fall she began reporting to Tanya Pennington, a special education teacher at Iron Horse. From November 2006 to April 2007, Ms. Pennington documented concerns about Ms. Faragalla's job performance. Ms. Faragalla contends some of the events never occurred, or that Ms. Pennington misrepresented them. During this time, Ms. Faragalla complained to Ms. Pennington about being demeaned, having a heavier work load than other EAs, and being assigned different duties than other EAs, specifically excessive photocopying and cleaning the cafeteria.

Ms. Faragalla met with Ms. Pennington and Steve Getchell, Iron Horse Principal, in December 2006 to discuss an incident related to her supervision of special-needs students. Mr. Getchell informed her at that time that not all of the tasks in her job description involved working directly with students. In mid-February 2007 Ms. Faragalla had a dispute with Sandra Gates, another EA, about who would work with a particular student, after which she complained to Kathy Nelson, Iron Horse Assistant Principal, of being yelled at and harassed by other EAs. Ms. Nelson met with Ms. Faragalla and Ms. Gates regarding their dispute and spoke to other employees who witnessed it. She concluded that Ms. Gates had not yelled at or done anything harassing toward Ms. Faragalla. Ms. Nelson counseled Ms. Faragalla on the need to be flexible and get along with co-workers.

DCSD put Ms. Faragalla on a performance improvement plan (PIP) on February 22, 2007.  The PIP identified goals, including working cooperatively and collaboratively with Iron Horse staff; following assigned schedules when working with students; and maintaining appropriate behavior as outlined in the District Behavior Expectations.  It also called for Ms. Faragalla to receive coaching and training on working appropriately with co-workers, teaming, and collaboration.  The PIP required Ms. Faragalla to achieve the stated goals by May 11, 2007.  In a meeting on March 9, Mr. Getchell and Ms. Nelson informed Ms. Faragalla they had continuing concerns regarding her compliance with District Behavior Expectations.

On April 2, 2007, Ms. Faragalla complained to Debbie McGee, DCSD's Human Resources Director, of discrimination and harassment by Iron Horse staff.  Ms. McGee construed her complaint as alleging unlawful discrimination.  Four days later, on April 6, Mr. Getchell counseled Ms. Faragalla regarding a report that she had placed a rope around a student's body (hereafter Rope Incident).  On April 12, Mr. Getchell counseled her regarding a report that she had left a special needs student unattended in a bathroom on April 9 (hereafter Bathroom Incident).

Ms. McGee investigated Ms. Faragalla's discrimination and harassment claims and found no evidence to support them.  She reported her conclusions in writing to Ms. Faragalla on May 7.  Ms. Faragalla appealed Ms. McGee's decision to Superintendent Jim Christiansen, who reviewed the matter and

informed her by letter dated May 9, 2007, that he agreed with Ms. McGee's findings.

After consulting with DCSD's Human Resources Department, Principal Getchell recommended termination of Ms. Faragalla's employment to the DCSD Board of Education. He informed her of his recommendation orally and in writing on May 11, 2007. His letter to her summarized the performance incidents supporting his conclusion that she failed to achieve the goals outlined in the PIP. He also provided her with a new evaluation in which he rated her performance as "Does Not Meet Expectations." R., Vol. 2 at 440.

Ms. Faragalla filed a complaint against DCSD with the EEOC on May 31, 2007, alleging discrimination based on her national origin and religion, and retaliation. The Board of Education acted on Mr. Getchell's termination recommendation on June 5, 2007. Ms. Faragalla requested a Level III grievance hearing on her termination. She asked for union representation in this hearing, but Douglas County Federation for Classified Employees (DCFCE) declined to be involved on the basis that she was not a member of the union. She attended a Level III hearing before Bill Hodges, DCSD Assistant Superintendent, on June 14, 2007. He investigated her allegations and informed her by letter dated June 20, 2007, that he supported the decision not to reinstate her employment with DCSD. Mr. Hodges also told her she could ask DCFCE to pursue a Level IV

arbitration hearing on her behalf, but the decision to do so was within the union's discretion.

DCFCE sought the advice of counsel regarding whether to demand arbitration on Ms. Faragalla's behalf. Before addressing the merits of her grievance, counsel clarified that "[a]ll bargaining unit members, whether union members or not, receive representation from [DCFCE]." *Id.* at 330. Thus, Ms. Faragalla's status as a non-member was not an appropriate basis for the union to decline to represent her. Counsel then opined that her case was "extremely weak" and that DCFCE had "almost no chance of a successful arbitration" on her behalf. *Id.* On the basis of its counsel's opinion, DCFCE declined to demand arbitration on Ms. Faragalla's grievance.

Ms. Faragalla spoke to and met with Brenda Smith, President of DCFCE, and Tiffany Oslund, Classified Vice President of DCFCE. She says they tried to persuade her to assert in her grievance that she was doing a good job and was fired for no reason. But when she insisted on pursuing her discrimination and retaliation claims, they responded, "[T]here is no need for you to say all that[.] [T]hat is not going to look good. [T]his is going to make your grievance weak." *Id.*, Vol. 4 at 40. Explaining why she thought Ms. Faragalla should not assert her discrimination and retaliation claims, Ms. Smith told her, "[B]ecause Abeer, that makes your claim weak." *Id.*

Ms. Faragalla filed additional EEOC complaints against DCSD and CP on September 26, 2007, alleging that she was being denied employment opportunities due to negative references from her former employers. She claimed retaliation and discrimination based on her national origin and religion. Ms. Faragalla filed this action against defendants in December 2007. Her Third Amended Complaint (Complaint) included twelve claims for relief, alleging causes of action under Title VII, 42 U.S.C. §§ 2000e-2 & 2000e-3; 42 U.S.C. §§ 1981 and 1983, additional federal statutes, the United States Constitution, the Colorado Constitution, and other state law. Defendants moved for summary judgment. The district court referred their motions to a magistrate judge, who recommended that the district court grant summary judgment in favor of all defendants. After reviewing Ms. Faragalla's objections, the district court approved and adopted the magistrate judge's recommendations, granted the motions for summary judgment, and entered judgment in favor of defendants. The court subsequently awarded defendants their costs.

Ms. Faragalla filed timely notices of appeal and applications to proceed in forma pauperis on appeal. The district court granted her application in case number 09-1393 (grant of summary judgment), but denied her application in case number 10-1433 (award of fees/costs), concluding the latter appeal was not taken in good faith.

## II. Appeal Number 09-1393 - Grant of Summary Judgment

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) (quotation omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We examine the factual record and draw all reasonable inferences in the light most favorable to the non-moving party." *Somoza*, 513 F.3d at 1211. We construe Ms. Faragalla's pro se appeal arguments liberally. *See de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007).

### B. Discussion

#### 1. Sufficiency of Appellant's Arguments

We first address the sufficiency of Ms. Faragalla's appellate briefs. "[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation omitted). Under Federal Rule of Appellate Procedure 28(a)(9)(A), an appellant's argument must include her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." But contrary to this rule, rather than setting forth her

arguments in full, in numerous instances Ms. Faragalla references her district court filings in her appeal briefs, often in their entirety. And her cited district court filings frequently cross-reference to arguments in still other filings in that court. This is not acceptable appellate argument. Local 10th Circuit Rule 28.4 provides, "Incorporating by reference portions of district court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Fed. R. App. P. 28(a) and (b)." "Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and unnecessarily complicate the task of an appellate judge." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) (citations omitted). We will not sift through Ms. Faragalla's district court filings in order to discern the arguments she fails to develop in her appellate briefs and the portions of the evidentiary record on which she relies. We consider her appellate arguments with that caveat.

### 2. Sufficiency of Defendants' Summary Judgment Motions and Application of Summary Judgment Standard

Ms. Faragalla contends that defendants failed to satisfy their initial burden of production under Fed. R. Civ. P. 56(c). "Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed v. Bennett*,

312 F.3d 1190, 1194 (10th Cir. 2002) (quotation omitted). "In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citations omitted).

Ms. Faragalla fails to develop most of her arguments on this issue and the rest are meritless. Defendants were not required to produce evidence negating her claims. *See id.* And her attacks on the credibility of defendants' evidence are misplaced because "[i]t is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000). She also argues generally that defendants failed to identify evidence demonstrating the absence of any genuine issue of material fact; their evidence was conclusory, incoherent, senseless, contradicted, unsworn, and based on hearsay; and defendants' evidence, in itself, demonstrated disputed material facts. But she fails to develop any of these broad-brush arguments in her opening brief. Accordingly, we reject Ms. Faragalla's contention that defendants failed to satisfy their burden of production under Rule 56(c).

Ms. Faragalla also makes general assertions of error regarding the district court's application of the summary judgment standard, claiming the court ignored

evidence favorable to her, drew inferences and resolved material factual disputes in defendants' favor, and made credibility determinations and findings on state of mind. Because she also fails to support these contentions with argument sufficient to satisfy Rule 28(a)(9)(A), we do not consider them.

### 3. Claims Against DCSD

#### a. Retaliation Claims Under Title VII and § 1981

Ms. Faragalla alleged that DCSD retaliated against her in violation of Title VII and § 1981. Title VII prohibits retaliation against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by Title VII. *See* 42 U.S.C. § 2000e-3(a). Retaliation claims are also cognizable under § 1981. *See Somoza*, 513 F.3d at 1211 (noting test for establishing prima facie case of retaliation is same under Title VII and § 1981).

Finding no direct evidence of retaliation, the district court applied the familiar *McDonnell-Douglas* burden-shifting framework, whereby

> an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination.

*Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (citation omitted). The court first considered whether Ms. Faragalla met her burden to establish a

-11-

prima facie case of retaliation by showing (1) she "engaged in protected opposition to discrimination"; (2) she "suffered an adverse employment action"; and (3) "there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (quotation omitted).

### i.       Protected Activity

In order to engage in protected opposition to discrimination, an employee must oppose an employment practice made unlawful by Title VII. *See id.* Thus, an employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be "protected opposition to discrimination" unless the basis for the alleged unfair treatment is some form of unlawful discrimination in violation of Title VII. *See id.* Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits intentional race discrimination in the making and enforcement of contracts with both public and private actors. *See* 42 U.S.C. § 1981(a) & (c). The district court found that Ms. Faragalla's earliest protected activity was her complaint to Ms. McGee on April 2, 2007, which Ms. McGee construed as a claim of unlawful discrimination. In addition, the court also found that Ms. Faragalla engaged in protected activity by complaining of discrimination,

-12-

retaliation, and harassment in violation of Title VII in her communications to

Mr. Getchell and Ms. McGee on or about April 7, 2007.

Ms. Faragalla contends the court erred in concluding that none of her

pre-April 2, 2007 complaints qualified as protected opposition to discrimination.

The issue is whether she conveyed in these complaints a concern that DCSD had

engaged in a practice made unlawful by Title VII. "Although no magic words are

required, to qualify as protected opposition the employee must convey to the

employer his or her concern that the employer has engaged in a practice made

unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203

(10th Cir. 2008). She asserts the following communications were protected

activities: (1) her November 2006 complaint to Ms. Pennington about feeling

demeaned by Ms. Pennington's yelling and finger pointing and about being given

a heavier workload than other EAs, R., Vol. 4 at 189; (2) her February 2007

complaint to Ms. Nelson regarding "harassment" by other EAs, *id.* at 192[1]; (3) her

March 2007 complaint that the PIP was "retaliatory and discriminatory," *id.*;

(4) her March 2007 letter to Mr. Getchell, complaining that Ms. Nelson ignored

"reports of being harassed, intimidated, scrutinized, and verbally attacked at

---

[1]     Ms. Faragalla contends that, by limiting the length of her affidavit and her response to DCSD's motion, the district court prevented her from including all the details of her conversation with Ms. Nelson in her affidavit. She purports to appeal all district court orders relating to this issue. For her appellate argument she incorporates by reference her district court filings. We therefore decline to consider this issue.

work," *id.* at 220; and her undated letter to Mr. Getchell, responding to a letter from Ms. Nelson regarding her dispute with Ms. Gates in February 2007, *id.*, Vol. 2 at 427-30.[2]

None of these complaints, however, made any reference to Ms. Faragalla's race, religion, or national origin, or alleged discrimination or harassment on any unlawful basis. *See Peterson*, 301 F.3d at 1188 (holding absence of reference to unlawful discrimination can preclude retaliation claim "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed . . . a violation of Title VII"). Nor is there evidence that, despite any mention by Ms. Faragalla of discrimination on some unlawful basis, Ms. Pennington, Ms. Nelson, or Mr. Getchell nonetheless perceived her pre-April 2, 2007 complaints as relating to unlawful discrimination.

### ii. Materially Adverse Action Causally Connected to Protected Activity

To support a prima facie retaliation claim,

[n]o longer must a plaintiff prove that subsequent 'adverse employment action' was taken against her, as that phrase has been construed in Title VII discrimination cases. Rather the plaintiff must show that a reasonable employee would have found the action materially adverse such that they might be dissuaded from making a charge of discrimination.

---

[2]     Ms. Faragalla also asserts that the EEOC charge she filed against CP in October 2002 was protected activity, but she fails to cite evidence showing DCSD was aware of it.

*Somoza*, 513 F.3d at 1213. The district court considered whether there was a causal connection between Ms. Faragalla's protected activity and any of her alleged materially adverse actions. It concluded there was sufficient evidence to establish a prima facie case of retaliation based on Mr. Getchell rating her performance as "Does Not Meet Expectations" and providing her notice of termination of her employment on May 11, 2007, approximately one month after her April 2007 protected activity.

Ms. Faragalla contends the district court erred in failing to find a causal connection between her protected activity and several other alleged adverse actions. Two of her contentions have merit. First, she argues the evidence supports a reasonable inference that Mr. Getchell was aware of her April 2, 2007 protected activity and that he disciplined her for the Rope Incident four days later, on April 6, in retaliation for her complaint of discrimination. She argues the district court misconstrued her retaliation claim as relating only to the accusation against her, rather than the disciplinary decision by Mr. Getchell. We agree with Ms. Faragalla that the evidence supports a prima facie case of retaliation based upon the latter.

Next Ms. Faragalla contends that Ms. McGee also retaliated against her for submitting her discrimination claim. She points to her conversations with Ms. McGee, as described in her affidavit:

> I met with McGee about the first week of April. She denied my request for administrative transfer. When I stated my belief that DCSD is retaliating against me, just like CP did, [s]he said that I shouldn't say that or I'd look bad, and that they can terminate me for performance issue[s]. I said but what they have on me can't terminate me, right? She replied what they have on you so far can't terminate you. I said I am Ok then? She said they can terminate you for performance deficits. I said that they wouldn't find anything, and that I work really hard[.] She said they will have to work harder to find performance deficits so that they can terminate you. After I looked stunned or said excuse me, she said that if what they have on me isn't enough, they will need to work harder then to find, and to document performance deficits. . . . When I later ran into McGee . . . and told her that I was there to get transfer forms, she asked where I was trying to transfer to. I said several posting[s] and gave examples. She said that won't happen. I tried to end the conversation, and said hope to transfer soon, have a good day. She said I hope you will have a better day somehow, but that will not happen. I briefly froze, but then left[.]

R., Vol. 4 at 194 (emphasis omitted).

We conclude Ms. Faragalla presented sufficient evidence to support a prima facie case of retaliation based on Ms. McGee's statements. In *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007), we held that a reasonable employee could find an employer's threat to publicize scandalous rumors about the employee, regardless of their veracity, coupled with the employer's actions to make good on the threat, was sufficient to dissuade the employee from making a discrimination charge. Importantly, we also noted that

-16-

lesser conduct could suffice to support a retaliation claim. *See id.* at 1090-91 & n.7.

DCSD maintains there is no threat in Ms. McGee's statements. We disagree. Ms. McGee is DCSD's Director of Human Resources and she was the person tasked with investigating Ms. Faragalla's discrimination complaint. Immediately after advising Ms. Faragalla not to say that DCSD was retaliating against her because it would "look bad," Ms. McGee told her that, if they did not have a sufficient basis to do so yet, they would have to work harder to find and document performance deficits so they could terminate her. Ms. Faragalla interpreted Ms. McGee's comments as a threat that DCSD would drum up performance deficits if she continued to press her discrimination claims. Then, a short time later, Ms. McGee flatly informed Ms. Faragalla that she would not be able to obtain a transfer of position within DCSD. We conclude that Ms. McGee's statements could have dissuaded a reasonable employee in Ms. Faragalla's shoes from pursuing her discrimination charge.

### iii. Legitimate Non-Discriminatory Reasons for Adverse Actions

Having established a prima facie case of retaliation, the burden shifted to DCSD to show a legitimate, nondiscriminatory justification for its disputed actions. *See Stover*, 382 F.3d at 1070-71. DCSD asserted that it lowered Ms. Faragalla's performance rating and terminated her employment based upon

-17-

her performance deficits and her failure to adhere to the PIP. The district court found that DCSD satisfied its burden of production. Ms. Faragalla does not argue in her opening brief that DCSD failed to come forward with evidence of legitimate, non-discriminatory reasons for any of its materially adverse actions. Instead, after challenging the district court's conclusions regarding her prima facie retaliation case, she next contends that the court erred in its assessment of her pretext evidence. She has therefore waived consideration of any error in the district court's conclusion that DCSD satisfied its burden. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

### iv. Pretext

Ms. Faragalla contends that DCSD's proffered non-discriminatory reasons for its actions were pretextual. To establish a genuine issue as to pretext, she was required to demonstrate that DCSD's stated reasons were unworthy of belief. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009).

> [She] can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Id.* (quotation omitted).

Ms. Faragalla argues Ms. McGee's alleged statement about DCSD's plan to fabricate performance deficits, combined with the implausibility of the allegations DCSD made against her, supports an inference that DCSD fabricated her performance deficits in order to discharge her. She maintains that DCSD's allegations against her regarding the Rope Incident and the Bathroom Incident were implausible. But rather than developing this argument in her opening brief, she primarily cites to arguments she made in her district court filings. And her few citations to evidence in the record show only that she disagreed with Mr. Getchell's conclusions regarding these incidents. This is insufficient to show pretext, because "[a] challenge of pretext . . . requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (quotations omitted).

> The relevant inquiry is not whether [the decision-maker's] proffered reasons were wise, fair or correct, but rather we ask whether [he] believed those reasons to be true and acted in good faith upon those beliefs. Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision. Accordingly, [his] good faith perception of the employee's performance is relevant, not plaintiff's subjective evaluation of her own relative performance.

*Id.* (citations, quotations, brackets and ellipsis omitted). "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held

-19-

(even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

The central question, then, is whether Ms. Faragalla presented any evidence that Mr. Getchell did not honestly believe his conclusions related to the Rope Incident and the Bathroom Incident. Her affidavit, which describes her contrary versions of the relevant events,[3] does not establish the implausibility of Mr. Getchell's ultimate decisions, reached after weighing the conflicting evidence, or that DCSD's stated reasons were not held in good faith by Mr. Getchell. *See Piercy*, 480 F.3d at 1200-01.[4] Because Ms. Faragalla failed to establish that DCSD's proffered reasons were pretextual, we affirm the district court's grant of summary judgment in favor of DCSD on her retaliation claims.

---

[3] Ms. Faragalla admitted that she used a rope to keep two students in line, but she denied that she placed it around a student's body. She disagreed with Mr. Getchell's conclusion she had used poor judgment by using a rope, asserting her approach is supported by research. Ms. Faragalla also admits that she left a student unattended in a bathroom, but she asserts she asked co-workers to look after the student in her absence and she disputes that the student wasn't capable of using the restroom on her own. *See* R., Vol. 4 at 193-94.

[4] Ms. Faragalla also contends that Ms. McGee's alleged statement, that DCSD would work hard to find performance deficits, is evidence that the allegations against her were false, because Ms. McGee "had the means and the authority to fulfill her threat." Aplt. Opening Br. at 19. But she points to no evidence that Ms. McGee had any role in originating the allegations against her. The undisputed record shows that the allegedly false allegations concerning the Rope Incident and the Bathroom Incident were made by co-workers who claimed to have witnessed the events. Nor does she tie Ms. McGee's statement to a reasonable inference that Mr. Getchell did not rely in good faith on her co-workers' reports of her conduct.

### b. Hostile Work Environment Under Title VII and § 1981

A discrimination claim based on a hostile work environment is cognizable under both Title VII and § 1981. *See Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (Title VII); *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (§ 1981). A plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (quotation omitted).

> In making this determination, we consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position. We may consider the conduct's frequency and severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the plaintiff employee's work performance.

*Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (citation and quotations omitted). Additionally, the harassment must be based on the plaintiff's protected class or stem from discriminatory animus toward her protected class. *See id.* at 1139 (addressing claim of racially hostile work environment and stating "harassment must be racial or stem from racial animus" (quotation and brackets omitted)); *see also Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not actionable."). The same

-21-

criteria apply to a claim of a hostile work environment under § 1981. *See Witt*, 136 F.3d at 1432.

Moreover, an employee must establish a basis for employer liability for the conduct of its employees that creates a hostile work environment. *Tademy*, 520 F.3d at 1139. Employers may be liable under three different theories: "[1] the negligence theory, under which the employer fails to remedy a hostile work environment it knew or should have known about; [2] the actual authority theory, under which an employee harasses another employee within the scope of his employment; or [3] the apparent authority theory, under which the harassing employee acts with apparent authority from the employer." *Id.* (quotation omitted).

The district court reviewed Ms. Faragalla's evidence of a hostile work environment based on her race, national origin, and religion and concluded that (1) her unsworn interrogatory responses were not admissible evidence, (2) her deposition testimony about religious harassment was too vague to support her claim, and (3) her affidavit contained conclusory allegations of harassment by unidentified individuals at unspecified times, that also were insufficient to establish a hostile work environment.[5] The court further found that some of the

---

[5] The court included in this category of vague and conclusory allegations Ms. Faragalla's claims of harassment relating to her ex-husband's discrimination lawsuit; her discrimination charge against CP; alleged constant mockery of her

(continued...)

comments described in her affidavit could not reasonably be construed as stemming from racial or religious animus. It then concluded that the remaining comments and actions she alleged were neither pervasive nor sufficiently severe to alter the terms, conditions, or privileges of her employment. In addition, the court found that she provided no evidence of a basis for employer liability.

Much of Ms. Faragalla's contentions of error on this claim cite only to the arguments she made in her district court filings. The remainder of her arguments are without merit. She first asserts the district court erred in finding that certain comments did not stem from discriminatory animus. In her affidavit she alleged that Ms. Simon, who was apparently a co-worker,

> asked me if I am going back to Egypt, and if I speak good Egyptian. I said that I think of myself as American and am not going back to Egypt. She said *you are crazy*. I asked where she was born, and she said Ohio. I asked why she doesn't go back there. She said that her situation is different because Ohio is America, while I am from Egypt.

R., Vol. 4 at 191. She also stated that Ms. Pennington and Ms. Gates often said "*go home*" to her and to her child, *id.* at 190, 191. Relying on our decision in *Tademy*, she argues that a reasonable jury could conclude these comments evidenced discriminatory animus toward her based on her race and national origin. In *Tademy* we held a reasonable jury could find that a manager's

_____

[5](...continued)
accent and comments about her looks, skin color, eating habits, and language; and inquiries about her religion and why she does not take her children to church.

-23-

reference to an African-American employee as "boy" was racially motivated. 520 F.3d at 1142-43. We recognized that the term had been used to demean African-American men throughout American history and that a jury could conclude, based on the conflicting testimony regarding the context and tone, it was used in a demeaning manner toward the plaintiff. *Id.*

Ms. Faragalla maintains, without citation of authority, that "[t]he 'go home' comment is historically known to convey racial hostility." Aplt. Opening Br. at 23 n.25. But she provides no information in her affidavit about the context in which these alleged statements were made, such that it could reasonably be inferred they were racially motivated. As to Ms. Simon's comments, she states only that she believed them to be derogatory because they "directly spoke of [her] race and national origin." *Id.* at 22 n.21. Ms. Faragalla fails to show the district court erred in holding these comments cannot reasonably be construed as stemming from discriminatory animus. Not every reference to an employee's race or national origin in the workplace gives rise to an inference of discrimination. And without further context, which she fails to provide, directing an employee to "go home" cannot support a claim of a hostile work environment based on race.

Ms. Faragalla next contends that the district court erred in failing to find that some of the incidents of alleged harassment by her co-workers were sufficiently severe to alter the terms, conditions, or privileges of her employment. She points to two incidents described in her affidavit, in which she alleged that

-24-

> Dickman made a student, P, who is of Greek Origin like her, draw a big cross with the Greek Flag on it and hang it on [a] wall. Despite my attempts to redirect P to work with me, Dickman persisted on talking to him about the religious significance of the cross. The cross was displayed on the classroom wall for days visible to administrators.

R., Vol. 4 at 191 (Cross Incident). She also claimed that, when she told "Margaret" and Ms. Dickman that she had discharged her student loans, "they said that America is too kind to people like [her], who come from other countries, take loans and then discharge them. Dickman said that her father [or grandfather can't recall] didn't do that." *Id.* at 191-92 (brackets in original). She argues that these incidents, while not pervasive, were severe enough that a rational jury could infer she was subjected to a hostile work environment. She relies on our holding in *Tademy* that "a sufficiently severe episode may occur as rarely as once." 520 F.3d at 1144 (quotation omitted). In that case we noted that unambiguously racial epithets fall "on the more severe end of the spectrum." *Id.* (quotations omitted). We held that, although the alleged incidents were not pervasive, the plaintiff produced sufficient evidence of severe harassment based on a combination of racial epithets and the display of a noose—which we characterized as "an egregious act of discrimination calculated to intimidate African-Americans." *Id.* at 1145.

We find no error in the district court's determination that these two incidents alleged by Ms. Faragalla were not sufficiently severe, either

individually or in combination, to support an inference of a hostile work environment. Unlike the plaintiff in *Tademy*, she produced no evidence she was ever subjected to unambiguously derogatory epithets during her employment with DCSD. Nor did the Cross Incident include the type of intimidation inherent in the display of a noose to an African American. *See id.* at 1142 (observing "the noose is among the most repugnant of all racist symbols" (quotation omitted)). And her co-workers' critical comments about immigrants discharging debts under the bankruptcy laws did not rise to the level of an extremely serious incident that is, on its own, susceptible to an inference of a hostile work environment. *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (noting "courts should filter out offhand comments, and isolated incidents (unless extremely serious)"); *Witt*, 136 F.3d at 1433 ("The mere utterance of a statement which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII." (quotations, alteration, and brackets omitted)).

Finally, even if Ms. Faragalla had come forward with admissible evidence of alleged actions or comments that were pervasive or sufficiently severe enough to alter the terms, conditions and privileges of her employment, she fails to show a basis for DCSD's liability for the alleged hostile work environment. In order to survive summary judgment, the record must support both an inference of a hostile work environment and a basis for employer liability. *Ford*, 222 F.3d at 775. She

-26-

contends that DCSD negligently failed to remedy a hostile work environment of which it knew or should have known. *See Tademy*, 520 F.3d at 1139.

> Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment. We have held that actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees. When a management-level employee has not been notified, this court applies what amounts to a negligence standard: highly pervasive harassment should, in the exercise of reasonable care, be discovered by management-level employees.

*Id.* at 1147 (citations, quotations, and brackets omitted).

Ms. Faragalla provides no citation to the record to support her assertion there is evidence showing she notified DCSD of the harassment she allegedly suffered.[6] She maintains DCSD should have known about the Cross Incident. But even assuming DCSD was aware that a cross had been displayed in a classroom for several days, and it knew or should have know it was placed there in order to harass someone, we have concluded that the Cross Incident was not sufficiently severe, on its own, to support a claim of hostile work environment.[7]

___

[6] She refers to "data," which she says DCSD directed her to compile, and in which she claims she "inadvertently documented most incidents of harassment." Aplt. Opening Br. at 24. But she does not indicate where such "data" exists in the record.

[7] Ms. Faragalla contends for the first time on appeal that DCSD is

(continued...)

We affirm the district court's grant of summary judgment in favor of DCSD on Ms. Faragalla's hostile work environment claim.

### c. Disparate Treatment under Title VII and § 1981

Ms. Faragalla alleged that DCSD discriminated against her on the basis of her race, religion, and national origin by denying her job opportunities, subjecting her to different terms and conditions of employment, giving her a negative performance evaluation, and refusing to compensate her for additional duties. She asserted further that the DCSD Board of Education unlawfully discriminated against her when it endorsed her termination without due process. She had the burden of initially establishing a prima facie case of race, religion, and national origin discrimination by showing (1) she "belongs to a protected class"; (2) she "suffered an adverse employment action"; and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).[8] One method by which a plaintiff can establish the third element of a prima facie case is to show "the employer treated similarly situated employees more favorably." *Id.* at 800-01.

---

[7](...continued)
vicariously liable because she was harassed by supervisors, who took tangible employment actions against her, and whose reports collectively caused her termination. This court does not consider new theories on appeal. *See Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1232-33 (10th Cir. 1997).

[8]     Ms. Faragalla's § 1981 disparate-treatment claim is also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 n.4 (10th Cir. 2000).

The district court held that Ms. Faragalla failed to establish a prima facie case of discrimination with respect to most of her disparate-treatment claims because the record contained no competent evidence she was treated less favorably than employees not in her protected classes.  The court cited one exception:  her allegation she was subjected to different terms and conditions of employment.  The district court noted Ms. Faragalla's claims that she was the only EA given excessive copying assignments and a heavier caseload, and assigned to clean the cafeteria.  But the court concluded this evidence nonetheless failed to establish a prima facie case of discrimination because she did not show that she suffered an adverse employment action.

Ms. Faragalla asserts there is evidence she was treated less favorably by DCSD than similarly situated, non-protected employees with regard to every adverse employment action she alleged.  But she fails to support this assertion with citations to the record.[9]  In fact, her multi-page argument addressing her Title VII and § 1981 disparate-treatment claims includes only one citation to evidence in the record.  Alternatively, she contends she was not required to show less-favorable treatment in order to establish her prima facie case.  But again, she

---

[9]     Ms. Faragalla claims that DCSD refused to disclose records related to other EAs who were terminated for failure to show progress on a PIP.  She asserts these records are crucial to determining whether DCSD treated her differently than similarly situated, non-protected employees.  But to the extent she purports to appeal district court orders relating to this issue, her citations to her district court filings are not sufficient appellate argument.

doesn't point to other evidence supporting her claim. Finally, she maintains the district court erred in determining her alleged additional duties did not amount to an adverse employment action. We disagree. In this context, "[a]dverse employment action includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy*, 480 F.3d at 1203. Ms. Faragalla doesn't contend she was reassigned to a different position with significantly different responsibilities. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (holding transfer from job providing skilled technical assistance to meat-wrapping job suggested adverse employment action). And "a mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. *Piercy*, 480 F.3d at 1203 (quotation omitted). Ms. Faragalla does not dispute that some tasks within her job description did not involve working directly with students. *See* R., Vol. 2 at 420. In *Piercy* we held the employer's assignment of certain duties to only some employees holding the same position did not rise to the level of an adverse employment action. *See* 480 F.3d at 1204 n.13.[10] We conclude the district court

_____

[10] Ms. Faragalla contends that "[b]eing forced to clean and change diapers without gloves is adverse because it poses a significant risk of humiliation, not to mention that it is a health hazard." Aplt. Opening Br. at 25 n.28 (citation omitted). But she did not allege she was the only EA forced to do these tasks without gloves. In her affidavit she stated that Ms. Pennington insisted she

(continued...)

-30-

did not err in holding that Ms. Faragalla failed to establish a prima facie case of race, religion, or national origin discrimination under Title VII and § 1981, and we affirm the grant of summary judgment in favor of DCSD on these claims.

### 4.    Claims Against CP

CP terminated Ms. Faragalla's employment in September 2002, and she filed a charge of discrimination against CP with the EEOC in October of that year, claiming national-origin discrimination and retaliation.  She did not file suit against CP within 90 days of receiving a right-to-sue letter.  She filed a new charge of discrimination against CP in September 2007.  In her Complaint she alleged retaliation claims against CP under Title VII and § 1981, as well as state-law claims for defamation and intentional infliction of emotional distress by outrageous conduct.  All of her claims rested on her belief that CP provided negative information about her to prospective employers.

CP contended Ms. Faragalla could not establish a prima facie case of retaliation because there was no evidence it took any materially adverse action against her.  CP submitted an affidavit from Dana Neal, who had been CP's Human Resources Director from the time Ms. Faragalla was first employed by CP.  Ms. Neal stated that CP's policy is to direct to her any requests for

---

[10](...continued)
purchase her own gloves if wanted to use them.  *See* R., Vol. 4 at 190.  She points to no evidence that Ms. Pennington treated any other EA differently.

information about prior CP employees and she indicated she had not responded to any inquiry regarding Ms. Faragalla. Nor had CP's President or the other two employees in CP's Human Resources Department responded to any inquiry contrary to CP's policy and practice. CP also cited Ms. Faragalla's deposition testimony stating that no prospective employer informed her it had contacted her previous employers. In opposition to CP's motion, Ms. Faragalla submitted her affidavit and several emails, purportedly from prospective employers, responding to her requests for any information they had received from her previous employers. The district court found that her affidavit was conclusory and the emails she submitted supported, rather than contradicted, CP's evidence.[11] Therefore, the court held she failed to show a material-fact dispute regarding whether she suffered a materially adverse action. The court relied on the same conclusions in granting CP summary judgment on her state-law tort claims based on the same allegations.

Ms. Faragalla contends there is a genuine issue whether CP provided negative references. In her affidavit she stated, "I firmly believe that . . . CP is retaliating against me by providing false negative references about me to others." R., Vol. 3 at 139. She based this conclusion on the following facts asserted in her

---

[11] The district court noted Ms. Faragalla had not authenticated the emails, or demonstrated the applicability of any hearsay exception, but it considered the emails as if they were admissible.

affidavit: more than one employer expressed interest in hiring her after she was terminated by DCSD; the interviewers informed her she was recommended for hire; they all asked for information on her former employers and indicated they would contact those employers; then they never called her back. *See id.* She acknowledged in her affidavit, however, that human resources representatives from each of these prospective employers subsequently told her they had not contacted her references because she had not yet been recommended for hire. *See id.* And the emails she submitted, purportedly from three school districts she had applied to, also indicated they had not yet contacted her references. *See id.* at 132 ("In reply to your email, reference calls were not conducted because you have not been recommended for hire as of yet."); 133 ("[They] do not check ANY references until they've offered you employment."); 134 ("We have no knowledge of any information gathered from your previous employers.").[12] Nonetheless, Ms. Faragalla surmises that her prospective employers contacted and received references from CP containing false, negative information about her.[13] But her

_____

[12] Ms. Faragalla argues the district court read these emails out of the context of the entire communications. She maintains the prospective employers only denied contacting her "references" and did not respond regarding contacting her former employers. But one of the emails explicitly states the respondent had no information from previous employers and the other two were sent in response to her specific request for any information provided by her previous employers. Thus, Ms. Faragalla's inference that the responses addressed only her non-employer references is not reasonable.

[13] Ms. Faragalla also contends that other employers had confidential

(continued...)

-33-

suppositions are insufficient to establish a genuine issue of material fact in dispute with respect to any of her claims against CP. *Cf. Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 651-53 (10th Cir. 2008) (affirming summary judgment on claim for unlawful disclosure of confidential information based on speculation and surmise).

Finally, Ms. Faragalla contends the district court erred in granting CP summary judgment on her discrimination claim based on CP's termination of her employment, to the extent her Complaint asserted such a claim. The district court reasoned that, because she failed to file an action within 90 days of receiving a right-to-sue letter from the EEOC on the claim after her termination in 2002, the claim was barred. *See Witt*, 136 F.3d at 1429. Ms. Faragalla appears to argue that her discriminatory-discharge claim agaisnt CP is not barred because CP's alleged retaliation is a continuing violation. But that doctrine no longer applies with respect to discrete acts such as termination and retaliation. *See Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003). The district court did not err in holding that a claim based on Ms. Faragalla's discharge by CP would be untimely.

We affirm the district court's grant of summary judgment in favor of CP on all of Ms. Faragalla's claims.

---

[13](...continued)
information about her that could only have been disclosed by CP. But she does not identify the confidential information to which she refers.

### 5. Claims Against DCFCE

When Ms. Faragalla requested union representation in a Level III grievance hearing regarding her termination by DCSD, DCFCE declined to be involved on the basis that she was not a member of the union. After her Level III hearing, DCFCE sought the advice of counsel regarding whether to demand arbitration on Ms. Faragalla's behalf. DCFCE's counsel first clarified that her non-membership status was not a basis for the union to refuse to represent her. But counsel went on to address the merits of her claim and ultimately opined that her case was very weak and there was almost no chance for a successful arbitration of the grievance by the union. Relying on counsel's assessment, DCFCE declined to demand arbitration on her behalf. Ms. Faragalla asserted in her Complaint that DCFCE violated Title VII, § 1981, the Fifth and Fourteenth Amendments of the United States Constitution, the National Labor Relations Act, and state law by refusing to arbitrate her claims.

### a. Title VII Claim

The district court granted DCFCE summary judgment on Ms. Faragalla's Title VII claim because she failed to exhaust her administrative remedies by filing a charge against the union with the EEOC. Exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII lawsuit. *See Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980). And "each discrete incident of [discriminatory] treatment constitutes its own unlawful employment practice for

which administrative remedies must be exhausted." *Martinez*, 347 F.3d at 1210 (quotation omitted). After exhausting administrative remedies, an aggrieved party may bring a civil action against the respondent named in the administrative charge. *Romero*, 615 F.2d at 1311; *see also* 42 U.S.C. § 2000e-5(f)(1).

Ms. Faragalla does not assert that she named DCFCE as a respondent in any of her EEOC complaints. Instead, she argues the district court erred because she sufficiently alleged her discrimination claims against DCFCE in her EEOC filings against DCSD. But she fails to provide any citation to evidence in the record in support of this contention. Nor has she pointed to evidence establishing an "identity of interest" between DCFCE and DCSD sufficient to give the union notice of the charge and the EEOC opportunity to attempt conciliation, despite her failure to name DCFCE. *See Romero*, 615 F.2d at 1311. In *Romero* we held that "omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII." *Id.* We listed four factors relevant to whether a court has jurisdiction over a party not named before the EEOC:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way

represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 1312 (quotation omitted); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) (applying same factors to hold no identity of interest between former employer and union). The district court considered these factors and concluded there was no evidence to support an identity of interest between DCFCE and DCSD.

Ms. Faragalla addresses only the fourth factor, contending there is evidence indicating DCFCE represented that its relationship with her was through DCSD. She points to the email she received from Ms. Oslund on May 15, 2007:

I apologize for not responding to your emails sooner. I was out of the office Monday, the 14th. We were informed of your situation by HR, but were not involved. I would like to point out that you were not a union member at the time of your employment and as such, the DCF is not obligated to investigate any aspect of your termination.

R., Vol. 4 at 45. But this email did not inform Ms. Faragalla that her relationship with the union was to be through DCSD. Rather, Ms. Oslund told her that DCFCE would not be involved in her dispute with DCSD. Moreover, Ms. Faragalla concedes the record contains numerous direct communications between her and DCFCE regarding whether the union would represent her in her grievance with DCSD. We conclude the district court did not err in dismissing Ms. Faragalla's Title VII claim against DCFCE for lack of subject matter jurisdiction based on her failure to exhaust administrative remedies.

### b.    § 1981 Race Discrimination Claim

Ms. Faragalla alleged that DCFCE discriminated against her based on her race by refusing to arbitrate her grievance with DCSD. DCFCE proffered, as its non-discriminatory reason for declining to pursue arbitration on her behalf, that it acted on its counsel's advice regarding the weakness of her claims. She argues generally that DCFCE failed to support this reason, and she also maintains she raised an inference of pretext. She contends further that DCFCE could not have believed its own reason or acted in good faith upon it, and that DCFCE's reason is false. But she fails to develop any of these arguments, citing only to the arguments she made in her district court filings.

Ms. Faragalla also argues the district court erred in holding her claims were distinguishable from the discrimination claims in *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), *superceded by statute on other grounds as recognized in Harris v. Allstate Ins.* Co., 300 F.3d 1183 (10th Cir. 2002). In *Goodman*, the Supreme Court upheld a trial-court verdict in favor of plaintiffs on their claims against a union for intentional discrimination in violation of Title VII and § 1981. The plaintiffs presented evidence that the union had a policy of not filing any grievances involving racial discrimination claims, despite the union's awareness

that the employer was discriminating against black employees. *See id.* at 669.

The Court concluded:

> [Title VII and § 1981] do not permit a union to refuse to file any and all grievances presented by a black person on the ground that the employer looks with disfavor on and resents such grievances. It is no less violative of these laws for a union to pursue a policy of rejecting disparate-treatment grievances presented by blacks solely because the claims assert racial bias and would be very troublesome to process.

*Id.* at 669. As the district court noted, however, Ms. Faragalla presented no evidence that DCFCE had a policy or practice of declining to assert discrimination claims. While she contends the holding in *Goodman* is not limited to "pattern and practice" evidence, and that the facts of her claim suffice to establish intentional discrimination under the reasoning of that case, she once again fails to cite to any evidence in the record. We affirm the district court's grant of summary judgment to DCFCE on Ms. Faragalla's § 1981 race-discrimination claim.

### c. Constitutional Claims

Ms. Faragalla asserted that DCFCE violated her Fifth and Fourteenth Amendment rights to due process by refusing to arbitrate her grievance with DCSD. The district court granted summary judgment to DCFCE on these claims, brought pursuant to 42 U.S.C. § 1983, because she failed to demonstrate the union was acting under color of state law. A labor union is generally not considered a state actor without evidence that it acted in concert with the state. *Montgomery v.*

*City of Ardmore*, 365 F.3d 926, 942 (10th Cir. 2004). "A private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Id.* (quotation omitted).

Ms. Faragalla maintains the record supports an inference that DCFCE and DCSD acted in concert to violate her constitutional rights. She points to the May 15, 2007 email from Ms. Oslund informing her DCFCE would not be involved in her grievance with DCSD because she was not a union member. *See* R., Vol. 4 at 45. She also relies on a statement by Ms. McGee that DCFCE's only role was to ensure that DCSD followed due process when terminating her. Neither of these statements supports an inference that DCFCE acted in concert with DCSD to deprive Ms. Faragalla of her constitutional rights. Rather, they tend to disprove concerted action by showing that DCFCE's role was independent of and adverse to DCSD. The remainder of Ms. Faragalla's allegations of conspiracy are conclusory and therefore insufficient to support her contention of concerted action. *See Montgomery*, 365 F.3d at 942. The district court did not err in concluding Ms. Faragalla failed to establish that DCFCE was acting under color of state law when it declined to arbitrate her grievance. We affirm the grant of summary judgment in favor of DCFCE on her § 1983 claims.

### d.    State-law Claims

Having granted DCFCE summary judgment on all of Ms. Faragalla's federal claims, the district court declined to exercise supplemental jurisdiction

over her remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).  She argues the district court's continuing jurisdiction over her federal claims against DCSD gave it supplemental jurisdiction over her interrelated state-law claims against DCFCE.  But the district court also approved and adopted the magistrate judge's recommendation to grant DCSD summary judgment on all of her claims.  Therefore, the court's decision to decline to exercise supplemental jurisdiction over her remaining state-law claims against DCFCE was appropriate.

## III.    Appeal Number 10-1433 - Award of Costs

Federal Rule of Civil Procedure 54(d)(1) provides:  "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  "This court has held that Rule 54(d) creates a presumption that the prevailing party shall recover costs."  *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995).  But "[a] prevailing party bears the burden of establishing the amount of costs to which it is entitled.  Our precedents establish that the amount a prevailing party requests must be reasonable."  *In Re Williams Securities Litigation—WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009) (quotation and citation omitted).  Under that test, costs for materials that "merely added to the convenience of counsel or the district court" are not recoverable.  *Id.* at 1147 (quotation omitted).  Accordingly, a district court should carefully scrutinize the items proposed by a prevailing party as costs.  *Id.*  "Once a prevailing party establishes its right to

recover allowable costs, however, the burden shifts to the non-prevailing party to overcome the presumption that these costs will be taxed." *Id.* at 1148 (quotation omitted).

A prevailing party initially files a bill of costs with the district court clerk, rather than with the court. *See id.* at 1146. The clerk may then issue an order taxing costs in favor of the prevailing party. *See id.* The clerk's order is reviewable by the district court on motion by the party against whom costs were taxed. *See* Rule 54(d)(1). The district court's review of a clerk's order is de novo. *See In Re Williams Securities*, 558 F.3d at 1147.

Here each defendant filed a bill of costs with the district court clerk, providing notice of a telephonic hearing to be held on September 30, 2009, at which time the clerk would tax costs. The deputy clerk contacted Ms. Faragalla by phone on that date, but she declined to participate in the hearing. She asserts that, because she believed the hearing would not go forward in light of her motion to stay the judgment pending appeal, she had not arranged for childcare and was therefore unable to take part in the hearing. The deputy clerk went forward with the hearing without Ms. Faragalla, denying her request for a continuance, and entered an order taxing costs in favor of defendants totaling $1,991.65. Ms. Faragalla filed a timely motion to strike the clerk's order, to which the defendants filed a response. Almost a year later, the district court denied Ms. Faragalla's motion because she "[did] not state any valid basis to challenge

-42-

either the procedures used to award costs or the substance of the costs awarded by the Clerk of the Court." R. at 95.

Ms. Faragalla raises on appeal essentially the same arguments she made in the district court. She asserts that the award of costs was procedurally defective because she did not have notice of and was not permitted to participate in the hearing with the deputy clerk on September 30, 2009. She also argues that defendants failed to prove that the transcript and copies for which the district court awarded costs were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2) & (4). Finally, she contends that the district court failed to review the record de novo and improperly issued a summary order denying her motion.

We review a district court's award of costs for an abuse of discretion. *See In Re Williams Securities*, 558 F.3d at 1148. "A district court abuses its discretion where it (1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *Id.* Ms. Faragalla has not shown that the district court abused its discretion in awarding defendants their costs in this case. First, her contentions regarding the district court's review of the clerk's order have no merit. She provides no basis for this court to conclude that the district court failed to conduct a de novo review. *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) ("We assume that the district court performed its review function properly in the absence of evidence to the contrary."). And the court's summary decision,

combined with the record, is sufficient to permit our meaningful review. *See*

*Tilton v. Capital Cities/ABC, Inc.* 115 F.3d 1471, 1474 (10th Cir. 1997) (holding

more detailed explanation for decision to award costs unnecessary where "record

contains no evidence that the district court abused its discretion in taxing [costs]

to plaintiff"). Nor has Ms. Faragalla shown that the district court abused its

discretion in awarding costs after the deputy clerk refused to postpone the hearing

scheduled for September 30, 2009. It is clear that Ms. Faragalla had notice of the

scheduled hearing, yet she made no arrangements to be able to participate,

incorrectly assuming instead that it would not go forward. Moreover, all of her

arguments challenging the taxation of costs, which she presumably would have

raised during the clerk's hearing, were subject to de novo review by the district

court.

Ms. Faragalla's contentions regarding the taxation of transcription fees and

copying costs are likewise without merit. Fees and costs for such materials that

were "necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(2),

(4). She argues that the district court erred in awarding defendants transcription

fees for her deposition, excerpts of which defendants attached as exhibits to their

summary judgment motions. She maintains that her deposition was not

"necessarily obtained for use in the case" because defendants knew when they

deposed her that her testimony would be inadmissible based on her mental state at

that time. But she did not argue in the district court, nor did the district court

hold, that her deposition was inadmissible on this basis. We conclude the district court did not abuse its discretion in awarding defendants transcription costs associated with Ms. Faragalla's deposition. *See In re Williams Securities*, 558 F.3d at 1148 ("Our cases establish that if deposition transcripts . . . were offered into evidence, were not frivolous, and were within the bounds of vigorous advocacy, costs may be taxed.") (quotations omitted).

She also challenges the district court's award of costs to defendants for copies of their summary judgment motions and exhibits, as well as copies of the exhibits she attached to her response to DCSD's summary judgment motion. In support of the reasonableness of these costs, defendants indicated they made copies of their summary judgment motions in order to serve Ms. Faragalla, a pro se party, by mail. DCSD further represented that it made copies of her summary judgment exhibits because she did not submit electronic copies of them to the court or email them to DCSD. Ms. Faragalla argues, as she did in the district court, that these copies were not necessarily obtained for use in the case because defendants could have served her with their summary judgment motions by email and she could have provided copies of her exhibits to DCSD at a lower cost. Her contentions fail to establish an abuse of discretion by the district court in concluding that these copying costs were for materials necessarily obtained for use in the case. Despite her assertion that all service in this case was effected by email, our review of the record on appeal indicates that, with very few exceptions,

-45-

defendants consistently served her with hard copies by regular mail. And she does not dispute that she filed with the court only hard copies of her exhibits in opposition to DCSD's summary judgment motion. Nor does she provide a basis, other than her own assertion, that the copying costs incurred by defendants were unreasonably high.

Ms. Faragalla has not shown a legal error, clearly erroneous factual finding, or lack of a rational basis in the evidence to support the district court's award of costs to defendants. Absent an abuse of discretion, we affirm the district court's order.

## IV. Conclusion

The judgment of the district court is AFFIRMED. Ms. Faragalla's Motion for Stay of Judgment Pending Appeal is DENIED as moot. We DENY her application to proceed in forma pauperis on appeal in case number 10-1433 on the same basis as the district court and direct her to immediately pay in full the filing and docket fee in that appeal.

Entered for the Court

Mary Beck Briscoe
Chief Judge

-46-